Commonwealth *v.* Hicks, Appellant.

154

Argued November 30, 1967; reargued January 14, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*John W. Packel,* Assistant Defender, with him *Melvin Dildine,* Assistant Defender, and *Herman I. Pollock,* Defender, for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Harold K. Don, Jr.,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, April 23, 1969:

Walter Hicks, after a trial without a jury, was convicted of the crimes of burglary, attempted burglary and possession of burglary tools. Post-trial motions were dismissed and prison sentences were imposed on the first two charges. On appeal the Superior Court affirmed the judgments with Judge HOFFMAN dissenting, 209 Pa. Superior Ct. 1, 223 A. 2d 873 (1966). We granted allocatur.

Hicks was stopped on a street in Philadelphia by two policemen without a warrant. A "patting down" of his person revealed that he had a penknife with a three inch blade in one of his pockets. The knife was taken from him and later introduced at trial, over objection, as a burglary tool. It is contended that the knife was secured through an unreasonable search and seizure in violation of the guarantees secured by the Fourth and Fourteenth Amendments and that evidence thereof should be excluded.

The pertinent facts are briefly these:

On February 22, 1966, at about 3:45 p.m., a Mr. Lloyd and his wife returned to a building on Lombard Street in Philadelphia where they resided in an apartment. While walking up the stairs they saw an unknown man, later identified as Hicks, standing on the level between the second and third floors. Mr. Lloyd

asked Hicks what he was doing there. He replied that he was looking for "R. J. Reynolds." Mr. Lloyd told him that no such person lived in the building and asked Hicks how he had gained entrance to the building since the front door could be opened only by a key or by a buzzer from the inside. Hicks made a vague reply and left.

When the Lloyds ascended to their third floor apartment, they discovered that the door leading therein from the hall had been tampered with. The wood around the lock had been dug out and chips of wood and paint were lying on the floor. Mrs. Lloyd immediately phoned police headquarters and related everything that had occurred. She described the stranger seen on the steps as a Negro in his thirties with a mustache and wearing a brown coat. She also described his height and weight.

The above information was relayed by headquarters to a police officer, named Closkey, who was on patrol in the area. At about 4:30 p.m., Closkey and another officer saw Hicks walking on the street approximately four blocks from the location of the Lloyd apartment. They stopped him and "patted him down." The knife involved was found in one of his pockets.

At the time Hicks was stopped, he was walking down the street like any other pedestrian. He was not carrying anything, nor acting in an unusual manner. He was wearing "a very light colored coat, beige or white." He did not have a mustache, but did "need a shave." At trial, the arresting officers did not say that his height or weight corresponded with the description given by Mrs. Lloyd.[1]

Hicks was removed to police headquarters. About forty-five minutes later, he was identified by the Lloyds

---

[1] Testimony at the pretrial suppression hearing was not recorded and is not available for consideration.

as the intruder. The victim of another burglary committed under similar circumstances at an address about two blocks from the Lloyd residence also identified him as the intruder at that location.

The majority of the Superior Court were of the view that the stopping and "patting down" of Hicks, based on reasonable suspicion as distinguished from probable cause, was something less than an arrest.[2] That analysis is, however, quite inaccurate as is clearly manifested by the recent decision of the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968). *Terry* makes it clear that if a police officer accosts a person on the street and restrains him of his freedom to walk away, he has "seized" that person, and if he merely explores just the outer surface of such a person's clothing, that is a "search,"[3] and such search and seizure are within the purview and protection of the Fourth Amendment.

---

[2] In fairness to the Superior Court, we note that at the time of its consideration and decision in this case recent relevant cases in the United States Supreme Court were yet undecided. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968); *Sibron v. New York*, 392 U.S. 40, 88 S. Ct. 1889 (1968); and *Peters v. New York*, 392 U.S. 40, 88 S. Ct. 1889 (1968).

[3] In *Terry v. Ohio*, the court stated: "There is some suggestion in the use of such terms as 'stop' and 'frisk' that such police conduct is outside the purview of the Fourth Amendment because ..either action rises to the level of a 'search' or 'seizure' within the meaning of the Constitution. We emphatically reject this notion. It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime-'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person. And it is nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing . . . is not a 'search.' " 392 U.S. 1, 16, 88 S. Ct. 1868, 1877.

Hence, there can be no question but that in the instant case, Hicks was seized and searched by the police and the Fourth Amendment is applicable in the same way as it is to every other search and seizure. Therefore, the issue is basically one of "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security": *Terry v. Ohio*, 392 U.S. 1, 19, 88 S. Ct. 1868, 1878-79. And this being so, the inquiry is "a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place": *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879.

In resolving the above inquiry in the instant case, three decisions of the United States Supreme Court are pertinent, namely: *Terry v. Ohio*, supra; *Sibron v. New York*, 392 U.S. 40, 88 S. Ct. 1889 (1968); and, *Peters v. New York*, 392 U.S. 40, 88 S. Ct. 1889 (1968). And our study of these decisions teaches the following:

First, a seizure and search, such as here involved, is reasonable and legitimate if the police officer has probable cause to arrest, i.e., if at the inception of the seizure he has knowledge of sufficient facts and circumstances, gained through trustworthy information, to warrant a prudent man in the belief that the person seized has committed, is committing, or is about to commit a crime. Second, even if probable cause to arrest is absent, the police officer may still legitimately seize a person, such as Hicks was seized in this case, and conduct a limited search of the individual's outer clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officer and others, *if* the police officer observes unusual and suspicious conduct on the part of the individual seized which leads him reasonably to conclude that criminal activity may be afoot and

that the person with whom he is dealing may be armed and dangerous.[4]

The present case has been presented in argument to the appellate courts of this Commonwealth on three separate occasions: once before the Superior Court and twice before this Court.[5] The Commonwealth does not now contend, nor has it ever contended, that the police officers had probable cause to arrest Hicks at the inception of the seizure. This is understandable. At the time of the seizure, the police were seeking, as the perpetrator of the Lloyds' attempted burglary, a mustached Negro in his thirties, of a certain height and weight, wearing a brown coat. Hicks was not wearing a brown coat, did not have a mustache, and there is nothing in the record to indicate that he was of the approximate height and weight of the individual sought. In short, the only manner in which Hicks fit the description of the individual the police were seeking, as far as the record discloses, is that he was a Negro in his thirties. This, in itself, was clearly not sufficient to establish probable cause. Moreover, it is fundamental that neither the evidence disclosed by the search, nor the evidence uncovered after the seizure may be considered in determining whether probable cause existed: *Terry v. Ohio,* supra. Hence, the Lloyds' subsequent identification of Hicks as the felon is irrelevant to the legal issue of probable cause.

---

[4] Police conduct in seizing and searching an individual reasonably believed to be armed and dangerous is not subject to the warrant clause of the Fourth Amendment and need not therefore meet the test of probable cause to justify it. Instead such conduct must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures. *Terry v. Ohio,* supra.

[5] When it was first argued before this Court, the decisions in *Terry v. Ohio, Sibron v. New York* and *Peters v. New York,* all supra, had not been entered. We granted reargument in order to consider the impact of these decisions.

While the Commonwealth does not contend that probable cause to arrest Hicks existed, it does nevertheless earnestly assert that the officers were justified in seizing Hicks and conducting a limited search of his clothing to discover the presence of dangerous weapons.. This argument is premised upon the teaching of *Terry v. Ohio,* supra, *Sibron v. New York,* supra, and *Peters v. New York,* supra, as outlined hereinbefore, that even in the absence of probable cause, a person may under certain circumstances be seized and searched by the police to protect their own safety. What the Commonwealth overlooks is that for such a precautionary seizure and search to be legitimate, there must first exist on the part of the police a reasonable belief that criminal activity is afoot and that the seized person is armed and dangerous. The police must prove that specific conduct of the seized person, observed by them, justified and made reasonable their belief that criminal activity was afoot and that the seized person was armed and dangerous. The instant record is devoid of such necessary proof. Hence, the seizure was not "justified at its inception" and was violative of the Fourth Amendment. The evidence resulting therefrom should have been excluded.

The order of the Superior Court and the judgments of the trial court are reversed and a new trial is ordered.

Mr. Justice COHEN concurs in the result.

Mr. Chief Justice BELL dissents.