Commonwealth *v.* Johnson, Appellant.

Submitted September 21, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Barbara Bailey* and *John W. Packel*, Assistant Defenders, and *Vincent J. Ziccardi*, Defender, for appellant.

*Milton M. Stein*, Assistant District Attorney, *James D. Crawford*, Deputy District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commmonwealth, appellee.

OPINION PER CURIAM, November 23, 1971:
Order affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

This is an appeal from the denial of a petition filed under the provisions of the Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, §1, et seq., 19 P.S. §1180-1, et seq. Appellant was convicted of burglary and larceny at the December Sessions, 1965, and he appealed the denial of his pretrial motion to suppress to this Court. On April 12, 1967, this Court affirmed appellant's conviction without opinion. Appellant contends in this appeal that he is entitled to a new trial on the basis of the Pennsylvania Supreme Court's decision in *Commonwealth v. Hicks*, 434 Pa. 153, 253 A. 2d 276 (1969).

The circumstances of appellant's arrest are as follows: On December 3, 1965, at about 5:00 p.m., two police officers on duty in their patrol car observed a group of men on a street corner "playing fisticuffs and using a little profanity." A group of onlookers had gathered, and they cheered and encouraged the men who were involved in this horseplay. Without getting out of their car, the officers told the group to "knock

off the horseplay and move along." The group dispersed, some of the men going inside a bar and some walking away. Appellant and another man, both of whom had been in the group, were among those who walked away. They turned a corner, and the officer driving the patrol car happened to turn the same way. As the officer turned the corner, the other officer in the car noticed that appellant and his companion "appeared to be picking up a little pace in their walk." This officer remarked to the officer driving the car that it looked to him as though the men ". . . were walking at an extra fast pace to avoid us, any further contact with us." The officers then drove alongside appellant and his companion, and stopped. The two officers got out of the car and asked appellant and his companion who they were, where they were going, and for some identification.

When one of the officers asked appellant for some identification, appellant told him his name and pulled "a bunch of papers" from one of his pockets. On top of the papers was a postal savings bond. The bond was not in the name of the appellant. The officer, noticing this discrepancy, asked to see the other papers, took them from appellant's hand, and upon going through them found, in addition to the postal savings bond, other valuable papers not in the appellant's name. The officer asked appellant how he happened to have these papers, and appellant said that he had found them. Appellant then did show the officer a card from his wallet identifying himself.

The offficers took appellant to a police station where they learned that the papers found on appellant had been stolen between 11:30 a.m. and 5:00 p.m. on December 3, the day of appellant's arrest. Appellant was found guilty of this theft.

The lower court which considered appellant's Post Conviction Hearing Act petition found that appellant

had been "seized" because it was unlikely that a person would feel free to walk away after being confronted by a police officer and asked to produce identification.[1] Therefore, the police officers' conduct must be judged by the fourth amendment standard of "reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Terry v. Ohio,* 392 U.S. 1, 19 (1968), quoted with approval in *Commonwealth v. Hicks,* 434 Pa. 153, 158, 253 A. 2d 276, 279 (1969).

In *Hicks* our Supreme Court stated that "even if probable cause to arrest is absent, the police officer may still legitimately seize a person . . . *if* the police officer observes unusual and suspicious conduct on the part of the individual seized which leads him reasonably to conclude that criminal activity may be afoot. . . ."

The lower court found that the officers' suspicion "was based on very little information," but it did not regard the intrusion into appellant's privacy as serious. I disagree. If police are free to conduct an interrogation whenever they observe a person walking at an increased pace down a city street during the daytime, a great number of people will be subject to the possibility of a police intrustion into their privacy even though their conduct is in no way related to any conceivable criminal activity. Police interference with personal security must be restricted to circumstances where the police reasonably believe that observed conduct is connected directly with criminal activity. No other result is consonant with the fourth amendment.

---

[1] "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio,* 392 U.S. 1, 16 (1968), quoted with approval in *Commonwealth v. Hicks,* 343 Pa. 153, 157, 253 A. 2d 276, 279 (1969).

Here, appellant did no more than "pick up a little pace in his walk." The police inferred that this was an attempt to avoid them, and then inferred criminal activity from the attempt to avoid. The circumstances simply do not sustain the first inference. A much more reasonable inference is that appellant and his companion were leaving the group on the street corner as quickly as possible in compliance with the officers' order to move along. The record does not show any conduct by appellant or his companion which would reasonably support an inference of intent to avoid the officers.

For the above reasons, I would reverse the judgment of the lower court and remand for a new trial.

SPAULDING, J., joins in this dissenting opinion.