**Commonwealth v. Pheasant**

*John T. Robinson, district attorney,* for the Commonwealth.

*Robert H. Steinberg,* for defendant.

WOELFEL, *J.,* December 18, 1991—Defendant has filed an application for the suppression of evidence which he claims was illegally seized during an unlawful search of defendant's person. During the early morning hours of March 16, 1991, Pennsylvania State Police Troopers Laskey and Martin responded to a complaint of a loud party in the borough of McClure. Prior to and after responding to the complaint, the troopers observed a vehicle being driven in an erratic manner. The troopers pursued and then succeeded in pulling over the vehicle. The vehicle contained two occupants, one of whom was the defendant, the passenger.

The troopers detected an odor of alcohol emanating from the vehicle. As a result, Trooper Laskey administered field sobriety tests to the driver, who passed in a borderline fashion. The troopers, still questioning why the vehicle had been operated in an erratic manner, requested permission to search the vehicle, which the driver granted. At this point in time, both of the occupants and the troopers were standing outside the vehicle that had been stopped.

Because Trooper Laskey would have been occupied with searching the vehicle, leaving Trooper Martin standing alone with the occupants, in the dark, Trooper Martin conducted a pat-down search of the driver and the defendant. As Trooper Martin conducted the pat-down of defendant, he felt something hard in the left front pocket of defendant's jacket, which the trooper testified he thought could have been a weapon—spe-

cifically, a pocket knife, which would have been the size and shape of the hard object that he felt in the defendant's pocket. Trooper Martin reached into the jacket and retrieved a marijuana bud—the subject of the instant suppression application. Defendant claims that the marijuana bud had been illegally seized and, as a result, must be suppressed. In limited circumstances, an individual may be stopped, briefly detained and frisked for investigatory purposes. *Commonwealth v. Prengle,* 293 Pa. Super. 64, 68, 437 A.2d 992, 994 (1981). The Supreme Court decision in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), sets forth the parameters for a warrantless search during an investigative stop:

"[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonable prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.... And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experiences." *Id.* at 27, 88 S.Ct. at 1883.

The Pennsylvania Supreme Court has also allowed for investigatory stops and frisks in this Commonwealth. In *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969), based substantially on *Terry v. Ohio, supra,* the court established the standard for *Terry* stops and frisks in Pennsylvania:

"[E]ven if probable cause to arrest is absent, the police officer may still legitimately seize a person,... and conduct a limited search of the individual's outer clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officer and others, if the police officer observes unusual and suspicious conduct on the part of the individual seized which leads him reasonably to conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous." *Hicks,* 434 Pa. at 158, 253 A.2d at 279. (footnote omitted, emphasis original)

The conduct of the investigating officer's conduct must be examined at two levels: the legality of the initial stop and the propriety of the officers' actions subsequent to the stop. *Commonwealth v. Otto,* 343 Pa. Super. 457, 460-461, 495 A.2d 554, 555 (1985). If the police have a reasonable suspicion that criminal activity is afoot, they may make a temporary, investigatory stop even though they lack probable cause to make an arrest. The initial stop of a person is legitimate if the investigating officers can point to specific and articulable facts, which, in conjunction with rational inferences deriving therefrom, reasonably warrant the intrusion. *Commonwealth v. Jackson,* 359 Pa. Super. 433, 519 A.2d 427 (1986). (citations omitted)

It appears that defendant herein is not objecting to the stop itself. Thus, the legality of the initial stop will not be scrutinized in great detail. Suffice it to say that in the instant case, the vehicle in which the defendant had been a passenger had been pulled over because it had been observed being operated in an "erratic" fashion. Thus, the troopers possessed a reasonable suspicion that crime was afoot, namely driving while under the influence of alcohol or controlled substances.

To justify a frisk incident to an investigatory stop, the police need to point to specific and articulable facts indicating that the person they intend to frisk may be armed and dangerous; otherwise, the talismanic use of the phrase "for our own protection" becomes meaningless. An expectation of danger may arise under several different circumstances: the police may reasonably believe themselves to be in danger when the crime reported to have been committed is a violent crime; when a perpetrator is reported to possess or have used a weapon; when the police observe suspicious behavior, such as sudden or threatening moves; the presence of suspicious bulges in a suspect's clothing; or when the hour is late or the location is desolate. A frisk might also be implemented to protect innocent bystanders within the vicinity of an encounter. *Commonwealth v. Jackson,* 519 A.2d at 431. (citations omitted)

Moreover, the scope of a *Terry* search is limited. Because the sole justification of the search is the protection of the police officer and others nearby, it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments which could be used to assault the police officer. In order to reach into a suspect's pockets during a *Terry* search, the police officer would have to feel something that appears to be a weapon. *Commonwealth v. Canning,* 402 Pa. Super. 438, 587 A.2d 330, 331 (1991).

During the suppression hearing, Trooper Martin admitted that he had no reason to believe that defendant was armed and dangerous. There was no testimony that the defendant or the driver had used any weapons in any alleged offense, or that they had engaged in any suspicious behavior such as sudden moves, there was no testimony that they had suspicious bulges in their clothing. It certainly was dark at the time of the stop, but there was no testimony that the locale

of the stop was desolate. Finally, Trooper Martin stated that it was police practice to search individuals when one trooper remains with the individuals while the other trooper is searching the vehicle.

After removing the marijuana bud, Trooper Martin instructed the defendant to empty his pockets. This request produced several "Bic" type lighters. Trooper Martin could not recall with certainty whether a lighter had been produced from the same pocket from which the marijuana bud had been seized, and in which trooper originally perceived the hard object that was roughly the size and shape of a pocket knife.

In light of circumstances recounted at the suppression hearing, we conclude that the search into defendant's front jacket pocket exceeded the scope of a *Terry* search. Trooper Martin did not articulate any specific facts to justify a belief that defendant was armed and dangerous or that the troopers were insecure or at risk for their personal safety. It appears to this court that the decision to frisk the defendant was based upon the troopers' standard procedure, as opposed to any "specific an articulable facts" tending to indicate that defendant was armed and dangerous. In addition, it is questionable whether the marijuana "bud" could have been reasonably mistaken for a weapon. Thus, insofar as the marijuana bud was improperly seized, it must be suppressed.

An order consistent with this opinion will be entered.

## ORDER

And now, December 13, 1991, it is hereby ordered that the defendant's application for suppression of evidence is granted. Any and all evidence relating to a certain marijuana bud seized from the defendant on or about March 16, 1991 is hereby suppressed.