**In re Cox**

*James M. Jacobs Jr., assistant district attorney,* for the Commonwealth.

*Joseph B. Policicchio,* for defendant.

CASCIO, *J.,* November 22, 1993—This case is before us on juvenile's omnibus motion for pretrial relief which consists of a motion to suppress evidence.

The facts may be summarized as follows:

On March 3, 1993, juvenile was a passenger in a vehicle which was stopped for two moving violations by Officer Howard Jackson Jr. of the Somerset Borough Police Department. Jackson spoke with the driver, smelled an odor of intoxicant from the driver's mouth and observed that the driver had bloodshot eyes. Jackson radioed for backup and Officer David Deist arrived.

Upon Deist's arrival, Jackson informed him as to why the stop was made. Jackson requested that Deist identify the juvenile. Deist used a flashlight to observe the juvenile. Deist detected an odor of what he believed to be burnt marijuana coming from the car. He also observed that the juvenile's eyes were bloodshot. Deist took the juvenile to his cruiser. He smelled intoxicants from the juvenile's mouth.

Deist conducted a pat-down on the juvenile, removing nothing from the juvenile's pockets. Deist did, however, ask the juvenile to remove the contents from his pockets and found a photo identification, cigarettes, a lighter,

keys and change. Deist observed a cellophane wrapper in the juvenile's right hand and asked the juvenile to hand it to him. In the cellophane wrapper was a substance later determined to be marijuana, and hence, the juvenile was charged with possession of marijuana.

At the hearing on the motion before us, the Commonwealth introduced testimony regarding the Somerset Borough Police Department policy on the transportation of persons in custody. A copy of the policy was admitted into evidence as the Commonwealth's exhibit A. Pursuant to the borough's policy, all persons in custody will be searched prior to being placed in a police vehicle. The purpose of the policy is to establish guidelines for the transporting of persons in custody with primary importance placed on the safety and well-being of the officer and prisoner.

Both Officers Jackson and Deist testified at the hearing. On cross-examination, Jackson testified that there was nothing about the juvenile that led Jackson to believe that criminal activity was afoot. Jackson further admitted on cross-examination that he did not observe anything to cause him to believe that the juvenile was armed and dangerous. Deist testified that he conducted the pat-down pursuant to the policy and for his own safety. However, he also stated that he originally did not intend to transport the juvenile. On cross-examination, Deist admitted that he had no reason to believe that the odor of burning marijuana was coming from the juvenile. Deist stated that he had no suspicion or probable cause to believe that the juvenile had violated any drug laws. Deist further admitted on cross-examination that there was nothing about the juvenile's conduct that led Deist to conclude that the juvenile was

armed and dangerous. Deist did not ask the juvenile to consent to the search.

In his testimony, Deist explained that a pat-down search is for weapons. He admitted that the search of the juvenile was not a search incident to arrest. In fact, the juvenile was told that he was not under arrest prior to being placed in the cruiser. Deist stated that the pat-down was not in accordance with the department's procedure. Finally, Deist admitted there was no probable cause to arrest the juvenile prior to the pat-down and that there was no probable cause to conduct a full blown search of the juvenile prior to the pat-down.

## DISCUSSION

As a fundamental principle of American law, a search warrant must be obtained in order for a police officer to lawfully search a person or his property. *Commonwealth v. Stapleton,* 51 Somerset Leg. J. 276, 279 (1993) (citing *Commonwealth v. Bentley,* 276 Pa. Super. 41, 47, 419 A.2d 85, 88 (1980)). This rule is not absolute, and several exceptions exist, two of which warrant further examination. A warrantless search is constitutionally permissible if incident to a lawful arrest. Additionally, stop and frisk searches conducted without a warrant are permissible in certain cases. See *id.*

We turn first to the issue of whether the search was conducted incident to a lawful arrest. As we have previously noted, a warrant is not necessary for a search incident to a lawful arrest. See *id.* Officer Deist testified at the hearing that he had no reason to believe that the odor of burning marijuana was attributable to the juvenile. Thus, there was no probable cause to arrest the juvenile for violating any drug law, another fact to which Deist testified.

The only charge contemplated was the summary offense of underage drinking. The juvenile could not be arrested for underage drinking. *Id.* at 281 (citing *Commonwealth v. Bullers,* 410 Pa. Super. 176, 599 A.2d 662 (1991)). There was no probable cause to arrest the juvenile for any other offense. Therefore, absent probable cause to arrest, a search incident to arrest is not permissible. *Stapleton, supra* at 281 (citing *Commonwealth v. Collini,* 264 Pa. Super. 36, 398 A.2d 1044 (1979); *Commonwealth v. Neufer,* 264 Pa. Super. 553, 400 A.2d 596 (1979)).

Our inquiry will not end at this point, because a warrantless search may also be permissible under the stop and frisk exception.

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court set forth the standard to be applied when assessing the reasonableness of a stop and frisk search and held:

"[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of his investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." *Id.* at 30, 88 S.Ct. at 1884-85, 20 L.Ed.2d at 911.

The Pennsylvania Supreme Court adopted the *Terry* standard in *Commonwealth v. Hicks,* 434 Pa. 153, 253

A.2d 276 (1969). The *Hicks* court established that even in the absence of probable cause, a police officer may legitimately pat-down a person where "the ... officer observes unusual activity ... which leads him reasonably to conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous." *Id.* at 158-159, 253 A.2d at 279.

Applying the standard as established by *Hicks* to the instant case, it is patently clear to us that the requirements for a constitutionally permissible stop and frisk search have not been met. At the hearing, Officers Jackson and Deist testified that they did not suspect criminal activity to be afoot and that they did not have reason to believe that the juvenile was armed and dangerous. We need not analyze this issue any further. Consequently, the stop and frisk exception will not save this illegal search.

Because the warrantless search does not fall within the search incident to arrest exception or the stop and frisk exception, we will grant the juvenile motion to suppress.[1]

## ORDER

And now, November 22, 1993, consistent with the foregoing memorandum, the juvenile's motion to suppress is granted, and the evidence obtained by the search of the juvenile's pockets is suppressed.

---

1. We find it unnecessary to determine whether the search was justified pursuant to the borough policy regarding the transportation of persons in custody. According to Deist's testimony, at the time the pat-down was conducted, Deist was not intending to transport the juvenile. Thus, we conclude that the pat-down was not conducted pursuant to the borough policy.