J-A19008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KYLE M. JONES, | |
| Appellant | No. 1695 EDA 2016 |

Appeal from the Judgment of Sentence Entered May 12, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008810-2105

BEFORE:  BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 15, 2017**

Appellant, Kyle M. Jones, appeals from the judgment of sentence of three years' probation, imposed after he was convicted of carrying a firearm without a license, 18 Pa.C.S. § 6106.  On appeal, Appellant solely challenges the trial court's denial of his pretrial motion to suppress a gun discovered in his possession during an investigative detention.  After careful review, we affirm.

Appellant was charged with the above-stated offense (as well as carrying a firearm on a public street in Philadelphia, 18 Pa.C.S. § 6108) after he was stopped and frisked by police officers on August 14, 2015.  During that stop and frisk, officers discovered a gun in Appellant's possession.  Prior to trial, Appellant filed a motion to suppress the gun.  Therein, Appellant argued, *inter alia*, that the officers did not have reasonable suspicion to

conduct an investigative detention and, thus, the subsequent frisk of his person and seizure of the gun was illegal.

The trial court conducted a suppression hearing on March 2, 2016. There, the following evidence was presented:

> Police Officer Abdul Malik testified that on August 14, 2015, at around 11:50 p.m., he was on patrol in the 18th District in Philadelphia when he received a radio broadcast for a person with a gun on the 5500 Block of Larchwood Avenue. (Notes of Testimony, 3/2/16, p. 6). A second radio call came through within minutes, broadcasting information that there had been a shooting at that location and that a victim was being transported to the hospital. Subsequently, another flash broadcast came through identifying three possible suspects - … a black male wearing a black/white shirt, … a black male wearing a red shirt, and a black male wearing a multicolored shirt and red hat.[1] (N.T. pp. 7-8). Officer [Malik] immediately surveyed the area. While driving by the 5500 block of Hazel Avenue,[2] Officer Malik observed four males fitting the flash description standing on the street and [he] went over police radio to relay this information. (Id. at 9).

> As [Officer Malik] approached the group of men, [he] told them to put their hands up in the air and asked if they had any weapons on them. Officer Malik stated that his justification for asking about the presence of weapons grew out of fear for his safety based on the report of a founded shooting in the area. [Appellant], who matched the description of the black male suspect with a black t-shirt, responded that he did have a weapon and that it was located in his pants pocket. Fearing for

---

[1] The trial court incorrectly states that the flash broadcast identified a black male wearing a white shirt. The portion of Officer Malik's testimony cited by the court does not support that there was any such description of a fourth male suspect.

[2] Officer Malik testified that the 5500 block of Hazel Avenue is "[t]he next block over" from where the shooting occurred. N.T. Suppression Hearing, 3/2/16, at 9.

his safety, Officer Malik handcuffed [Appellant] and retrieved the firearm from his right pocket. (Id. at 16-18).

Trial Court Opinion (TCO), 10/4/16, at 1-2.

Based on Officer Malik's testimony, the trial court concluded that, *inter alia*, the officer had reasonable suspicion to detain Appellant for further investigation. The court denied Appellant's motion to suppress and his case immediately proceeded to a non-jury trial. At the close thereof, the court convicted Appellant of carrying a firearm without a license (graded as a misdemeanor of the first degree). The court acquitted Appellant of carrying a firearm on a public street in Philadelphia. On May 12, 2016, Appellant was sentenced to three years' probation.

Appellant filed a timely notice of appeal, and he also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court subsequently filed a Rule 1925(a) opinion. Herein, Appellant presents one issue for our review: "Did not the trial court err in denying [A]ppellant's motion to suppress, as the officers did not have reasonable suspicion to detain him?" Appellant's Brief at 3.

Our well-settled standard of review of a denial of a suppression motion is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence

for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

*Commonwealth v. Jones,* 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted).

Here, the trial court concluded, and the parties do not dispute, that Appellant was subjected to an investigative detention when he was approached by Officer Malik (along with several other responding police officers, *see* N.T. Hearing, 3/2/16, at 14-16), and immediately directed to put his hands in the air. *See* TCO at 3; Appellant's Brief at 14; Commonwealth's Brief at 7. Therefore, we must assess only whether that detention was lawful. As this Court has explained:

The police are permitted to stop and briefly detain citizens only when they have reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot. *Commonwealth v. Zhahir,* 561 Pa. 545, 552, 751 A.2d 1153, 1156 (2000) (citing *Terry v. Ohio,* 392 U.S. 1, 21, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)); *Commonwealth v. Melendez,* 544 Pa. 323, 328, 676 A.2d 226, 228 (1996); *Commonwealth v. Hicks,* 434 Pa. 153, 160, 253 A.2d 276, 280 (1969). In determining whether reasonable suspicion exists for an investigative detention, or as it is also known in the common legal vernacular, a "*Terry* stop," the inquiry is the same under both the Fourth Amendment of the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution. *Commonwealth v. Cook,* 558 Pa. 50, 57, 735 A.2d 673, 677 (1999); *Commonwealth v. Jackson,* 548 Pa. 484, 488, 698

A.2d 571, 573 (1997). "The fundamental inquiry is an objective one, namely, whether 'the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate.'" **Zhahir, supra**, at 552, 751 A.2d at 1156 (citing **Terry, supra**, 392 U.S. at 21–22, 88 S.Ct. at 1880). In order to determine whether the police had a reasonable suspicion to subject an individual to an investigative detention, the totality of the factual circumstances which existed at the time of the investigative detention must be considered. **Id.** (citing **United States v. Cortez**, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). "Among the factors to be considered in establishing a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight." **Commonwealth v. Gray**, 784 A.2d 137, 142 (Pa. Super. 2001).

**Commonwealth v. Ayala**, 791 A.2d 1202, 1208 (Pa. Super. 2002).

In this case, the thrust of Appellant's argument is that Officer Malik lacked reasonable suspicion to detain him because the **Terry** stop was "based solely on [Appellant's] matching the description of a criminal suspect provided by an **anonymous** tip." Appellant's Brief at 15 (emphasis added). Appellant then discusses case law holding that **Terry** stops are illegal if premised only on uncorroborated, anonymous-tips. **See id.** at 15-19 (discussing, *inter alia*, **Commonwealth v. Hawkins**, 692 A.2d 1068, 1070 (Pa. 1997) ("If the police respond to an anonymous call that a particular person at a specified location is engaged in criminal activity, and upon arriving at the location [they] see a person matching that description but nothing more, they have no certain knowledge except that the caller accurately described someone at a particular location."), and **Jackson**, 698 A.2d at 573 ("When … the underlying source of the police department's information is an anonymous telephone call, the courts have recognized that

the tip should be treated with particular suspicion.")). Appellant claims that here, "there was nothing at all beyond the vague description" of the suspects that was provided by the anonymous caller and, therefore, Officer Malik did not possess reasonable suspicion to conduct the **Terry** stop. Appellant's Brief at 19.

Appellant's reliance on **Hawkins** and **Jackson** is misplaced and unconvincing. Initially, it is not even clear from the record that the description of the suspects came from the anonymous source. Specifically, Officer Malik testified that the anonymous tipster told police that there was "a person with a gun" and "a possible shooting" at a location "on the 5500 Block of Larchwood Avenue." N.T. Suppression Hearing, 3/2/16, at 7. Officer Malik then explained that, when officers arrived at the location, they found a male victim with gunshot wounds. **Id.** At that point, the responding officers put out a "founded shooting" flash, which meant that they had found "a person shot and shell casings…." **Id.** at 8. "Less than a couple minutes" after the founded shooting flash, Officer Malik received a third flash report, which included "the description of the suspects[.]" **Id.** at 9.

From this testimony, the trial court seemingly concluded that the anonymous caller had only reported 'a person with a gun' and a 'possible shooting,' as that was the only information transmitted in the first radio flash. **See id.** at 53; TCO at 1-2. Thereafter, the police officers at the scene relayed the description of the shooters. **See** N.T. Suppression Hearing, 3/2/16, at 53; TCO at 1-2. While nothing in the record clarifies

- 6 -

from *whom* the first-responding officers obtained that description, it is reasonable to infer that the description was provided by a *known* person at the scene, *i.e.*, the victim or an eyewitness to the shooting. As our Supreme Court stated in *Jackson*, "a tip from an informer known to the police carrie[s] enough indicia of reliability for the police to conduct a *Terry* search, even though the same tip from an anonymous informant would likely not have done so." *Jackson*, 698 A.2d at 574 (citation omitted). This is true because "a known informant places himself or herself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk." *Id.* (citation omitted). Because the record suggests that the description of the suspects in this case was provided by someone known to police, it was more reliable than an uncorroborated, anonymous tip.

Moreover, we also point out that even if Appellant were correct that the anonymous caller provided the description of the suspects, the first-responding officers sufficiently corroborated the source's information before Officer Malik detained Appellant. In particular, the officers found a victim who had been shot at the location where the anonymous tipster said a shooting had occurred. The *Jackson* Court declared that, "a *Terry* stop may be made on the basis of an anonymous tip, provided the tip is sufficiently corroborated by independent police work to give rise to a reasonable belief that the tip was correct." *Jackson*, 698 A.2d at 574 (discussing the holding of *Alabama v. White*, 496 U.S. 325, 331 (1990)).

"Essentially, the corroboration requirement is based on the principle that because an informant is right about some things, he or she is probably right about other facts also, including the allegation that the object of the tip is engaged in criminal activity." *Id.* (citing *White*, 496 U.S. at 331). Here, the anonymous tip was corroborated by the fact that a shooting had indeed occurred at the location provided by the tipster; thus, if the anonymous caller did provide the description of the perpetrators, that tip was more reliable than the uncorroborated, anonymous tips at issue in *Hawkins* and *Jackson*.

Finally, we reject Appellant's assertion that the description was "incredibly vague[,]" and that it was the only fact supporting Officer Malik's suspicion that criminal activity was afoot. Appellant's Brief at 19. The description, while not abundantly detailed, provided some identifying information to Officer Malik; namely, the suspects were described as being three black males, one wearing a black and white t-shirt, another wearing a red t-shirt, and a third wearing a multi-colored t-shirt and a red hat. Officer Malik observed Appellant, a black man who was wearing a black t-shirt, standing with three other black men, one of whom was in a red t-shirt, and one of whom was wearing a red hat. Moreover, Appellant and his companions were located approximately one block away from where the shooting occurred, just minutes after it had happened. We agree with the trial court that the totality of these circumstances provided Officer Malik with reasonable suspicion to detain Appellant for further investigation.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/15/2017