J-S13007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JUSTIN J. KELLUM, | |
| Appellant | No. 411 WDA 2018 |

Appeal from the Judgment of Sentence Entered October 19, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0006435-2015

BEFORE:  BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 17, 2019**

Appellant, Justin J. Kellum, appeals from the judgment of sentence of an aggregate term of 1 year less a day to 2 years less a day of imprisonment following his convictions for one count each of firearms not to be carried without a license (18 Pa.C.S. § 6106(a)(1)) and person not to possess a firearm (18 Pa.C.S. § 6105(c)).  Appellant challenges the denial of his motion to suppress evidence recovered during a search and seizure following a traffic stop.  We affirm.

The trial court provided the following factual summary of this case in its Pa.R.A.P. 1925(a) opinion:

> At the commencement of the suppression hearing/bench trial on July 24, 2017, the Commonwealth … called Detective Martin Kail, of the City of Pittsburgh Police Department, as [the]

_____

[*] Retired Senior Judge assigned to the Superior Court.

Commonwealth's first witness. Detective Kail is in his 11th year with the Pittsburgh Police and is currently assigned to the Homicide Unit. At the time of the incident herein, on March 17, 2015, he was assigned to the Narcotics and Vice Impact Unit.

On March 17, 2015, he was patrolling Zone 1, the North Side area of the City[,] and[] his duties on that day included street-level narcotics, firearms arrests, and things of that nature. The detective explained that the Perry North section of the City, where the incident took place, is a high-crime, high-drug area, where numerous firearms and narcotics arrests took place. On said date, at approximately 2105 hours, Detective Kail and three of his partner[s] observed a white GMC SUV travelling on Perrysville Avenue, making a turn without using a turn signal. At the time[,] all of the detectives were in plainclothes and were in an unmarked Chevy Impala. Detective Love was driving, Detective Kail [was] in the passenger seat, and Detectives Goob and Coleman were in the backseat. When they saw the vehicle make a turn without a turn signal, Detective Love activated the emergency lights and sirens and initiated a traffic stop for the Vehicle Code violation. According to Detective Kail, the driver immediately pulled to the right of the roadway. Detective Kail initially approached the driver's side with Detective Coleman, and Detective Goob approached the passenger side of the vehicle.

When he approached the vehicle, Detective Kail observed there were two male occupants; [Appellant] was the passenger and Mr. Stevenson was the driver, and both of them appeared to be nervous. Detective Coleman informed the others that he recognized the driver as a person he had arrested before for a firearm violation. Detective Kail testified at that point, coupling the high-crime area, the fact that Detective Coleman had arrested the driver for a prior firearm, and their nervous behavior, they first asked Mr. Stevenson to step out of the vehicle. When Mr. Stevenson stepped out of the vehicle, Detective Love observed a firearm in the driver's door map pocket. Mr. Stevenson was detained at that time. Detectives Kail and Goob went over to the passenger side and asked the visibly nervous [Appellant] to step out of the vehicle. He complied and put his hands on the car. Detective Goob patted him down and recovered what Detective Kail believed was a Glock 9mm from his waistband. He was also immediately detained. Detective Kail **Mirandized**[1] both men

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

- 2 -

and asked if they had a license to carry a concealed weapon[,] and he believed they both responded no. He ran both names through JANET and believed they were both former felons who were not to possess a firearm. On re-direct examination, Detective Kail identified [Appellant] in the courtroom as the person Detective Goob recovered the Glock 9mm from.

The Commonwealth's second and final witness for suppression purposes was Detective Mark Goob. Detective Goob has been a detective with the Pittsburgh Police Department for 16 years. He was working the evening of March 17, 2015[,] with Detectives Love, Coleman and Kail in plainclothes and an unmarked vehicle. He recalled a traffic stop that evening involving a white GMC Yukon. After the traffic stop was initiated, he immediately went to the passenger side of the vehicle, displayed his badge, and stood back as the other detectives spoke to the driver. The other detectives had the driver, Mr. Stevenson, exit the vehicle[,] and as he did[,] they discovered a gun. They took the driver into custody. At some point thereafter, Detective Kail came to the passenger side with Detective Goob and they had … [Appellant] exit the vehicle. Detective Goob then identified [Appellant] in the [c]ourtroom. As soon as he exited the vehicle, Detective Goob patted him down for weapons, where he felt a gun at the front of his waistband, took him into custody and recovered the firearm. Detective Goob stated that it was a fairly good sized firearm, a Glock Model 19, that he immediately recognized. Detective Goob observed that [Appellant] appeared to be nervous.

According to Detective Goob, there were several reasons for patting [Appellant] down for weapons: 1. They were in a high crime area; 2. The driver of the vehicle was previously arrested for a gun; 3. A gun was found inside the vehicle during the traffic stop; 4. From his experience, oftentimes when there[ is] one gun in a vehicle, there may be more; and 5. Most importantly, for safety concerns.

Trial Court Opinion ("TCO"), 8/13/18, at 3-6 (citations to record omitted).

After hearing the foregoing testimony, the court denied Appellant's motion to suppress and proceeded directly with the non-jury trial. Based on the evidence presented at trial, Appellant was found guilty of the crimes stated *supra*, and was sentenced on October 19, 2017, to a period of incarceration

of not less than one year less a day and not more than two years less a day. Post-sentence motions were filed on October 30, 2017, and were denied by the court on February 20, 2018.

On March 21, 2018, Appellant filed a timely notice of appeal, followed by a timely, court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant now presents the following sole issue for our review: "Did the trial court err in denying [Appellant's] suppression motion because the Commonwealth failed to produce evidence that the officers had either probable cause to conduct a traffic stop, or reasonable suspicion to remove him from the vehicle in which he was seated and search him?" Appellant's Brief at 3 (unnecessary capitalization omitted).

To begin, we note our standard of review:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. McClellan*, 178 A.3d 874, 880-81 (Pa. Super. 2018) (quoting *Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015)).

Instantly, Appellant argues that the trial court erred in denying his suppression motion because the Commonwealth failed to provide sufficient evidence to demonstrate that the police had probable cause to conduct a traffic stop. Appellant's Brief at 9. Appellant states that the only evidence of a traffic violation proffered by the Commonwealth is the testimony of Officer Kail, which Appellant suggests is unreliable. *Id.* at 11. Based on his conclusion that the evidence is insufficient to justify the traffic stop, Appellant avers that all evidence stemming from the stop must be suppressed. *Id.* In the event that this Court concludes the traffic stop was lawful, Appellant alternatively argues that "there still was no reasonable suspicion to remove [him] from the vehicle and [to] conduct a pat down search of his person." *Id.*

> It is well-established that:
>
> A police officer has the authority to stop a vehicle when he or she has reasonable suspicion that a violation of the vehicle code has taken place, for the purpose of obtaining necessary information to enforce the provisions of the code. 75 Pa.C.S. § 6308(b). However, if the violation is such that it requires no additional investigation, the officer must have probable cause to initiate the stop.

*Commonwealth v. Brown*, 64 A.3d 1103, 1105 (Pa. Super. 2013) (citing *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010)). Our Supreme Court has defined probable cause as follows:

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the stop, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Martin***, 101 A.3d 706, 721 (Pa. 2014) (citation and emphasis in original omitted). "Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even it if is a minor offense." ***Commonwealth v. Calabrese***, 184 A.3d 164, 167 (Pa. Super. 2018) (quoting ***Commonwealth v. Harris***, 176 A.3d 1009, 1019 (Pa. Super. 2017)).

Here, Appellant's vehicle was stopped for failing to use a turn signal, in violation of 75 Pa.C.S. § 3334, which provides in pertinent part as follows:

**§ 3334. Turning movements and required signals**

**(a) General rule**.—Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.

**(b) Signals on turning and starting.**—At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

75 Pa.C.S. § 3334(a), (b). Detective Kail testified that he observed the driver of the vehicle in which Appellant was riding fail to use a turn signal when turning left onto Marshall Road from Perrysville Avenue. N.T. Suppression, 7/24/17, at 8. Clearly, Detective Kail had probable cause to suspect that the driver of the vehicle violated Section 3334(a) of the Motor Vehicle Code, which requires a signal prior to turning a vehicle on a roadway. Thus, the traffic stop was proper. **See Brown**, 64 A.3d at 1106 (stating that where the officer witnessed the appellant's failure to use his signal lamps when turning from one street to another, he unquestionably possessed facts to warrant belief by any reasonable person that the appellant violated the Vehicle Code).

Having determined that probable cause existed to conduct the traffic stop, we now address Appellant's claim that the detectives lacked the requisite reasonable suspicion when they ordered him out of the vehicle and searched his person. Contrary to Appellant's assertion that the Commonwealth must establish that the detectives had a "reasonable, articulate suspicion" that Appellant was engaged in criminal activity before ordering him out of the vehicle, it is clear that "following a lawful traffic stop, an officer may order both the driver and passengers of a vehicle to exit the vehicle until the traffic stop is completed, *even absent a reasonable suspicion that criminal activity is*

*afoot*."   ***Commonwealth v. Pratt***, 930 A.2d 561, 564 (Pa. Super. 2007)

(emphasis added).[2]

Moreover, it has been clearly established that:

During this investigatory stop, the officer can pat-down the driver "when the officer believes, based on specific and articulable facts, that the individual is armed and dangerous." ***Commonwealth v. Stevenson***, 894 A.2d 759, 772 (Pa. Super. 2006), *appeal denied*, 591 Pa. 691, 917 A.2d 846 (2007), citing, ***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);[3] ***Commonwealth***

---

[2] The ***Pratt*** Court explained the basis for this rule of law:

In ***Pennsylvania v. Mimms***, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the United States Supreme Court held that police may require the driver of a lawfully stopped vehicle to exit the vehicle without any additional probable cause or reasonable suspicion without violating an individual's Fourth Amendment rights.  In so holding, the Court balanced the need to protect police officers from the serious and substantial dangers inherent in traffic stops, and the relatively minor intrusion upon the privacy rights of the driver in situations where the vehicle has been lawfully stopped.

…

In ***Maryland v. Wilson***, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed2d 41 (1997), the United States Supreme Court explicitly extended the rule of ***Mimms***, … stating:

In summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car.  While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal.

***Pratt***, 930 A.2d at 564 (quoting ***Wilson***, 117 S.Ct. at 886).

[3] The principles of ***Terry*** apply to all occupants of the stopped vehicle, not just the driver.  ***See Commonwealth v. Simmons***, 17 A.3d 399, 403 (Pa. Super.

> *v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969); *Commonwealth v. Robinson*, 410 Pa.Super. 614, 600 A.2d 957, 959 (1991), *appeal denied*, 533 Pa. 599, 617 A.2d 1273 (1992). Such pat-downs, which are permissible "without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly limited to that which is necessary for the discovery of weapons" that might present a danger to the officer of those nearby. *Commonwealth v. Ingram*, 814 A.2d 264, 269 (Pa. Super. 2002) (quotation omitted), *appeal denied*, 573 Pa. 671, 821 A.2d 586 (2003). When assessing the validity of a pat-down, "we examine the totality of the circumstances … giving due consideration to the reasonable inferences that the officer can draw from the facts in light of his experience, while disregarding any unparticularized suspicion or hunch." *Wilson*, 927 A.2d at 284 (citation omitted).[4]

*Commonwealth v. Parker*, 957 A.2d 311, 314-15 (Pa. Super. 2008). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Simmons*, 17 A.3d at 403 (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)).

Mindful of the foregoing principles, we review the findings of fact and conclusions of law that the trial court made at the close of the suppression hearing:

> [Appellant] was the passenger in a vehicle operated in an area of the Zone 1 area of the City of Pittsburgh[,] which the officers testified was a high-crime and high-drug area. Officers specifically testified that many firearms have been removed from the area.

---

2011) (citing *Commonwealth v. Mesa*, 683 A.2d 643, 646 (Pa. Super. 1996)).

[4] We previously determined that where a defendant is stopped in a high crime area, that factor "enhances the danger that police may encounter an armed subject in a fashion similar to, but greater than, a night time stop." *Commonwealth v. Scarborough*, 89 A.3d 679, 683-84 (Pa. Super. 2014).

The officers had a basis for the stop of the vehicle. Case law is absolutely clear that the officers are permitted to stop a vehicle upon the observance of any traffic violation which was articulated by the officer as to the failure to utilize a turn signal while making an established … left-hand turn as documented in the police reports.

At that point, the officers testified that one of the officers was familiar with the driver of the vehicle, Mr. Stevenson, as the person who, in the past, had carried a firearm. They asked Mr. Stevenson to exit the vehicle. Upon exiting the vehicle, they found a firearm in or around the driver area where Mr. Stevenson was located.

At that point, the officers … indicated that both the driver, Mr. Stevenson, and the front seat passenger, [Appellant], were both nervous and anxious. While that, in and of itself, is not sufficient, [given] the fact that the officers had already removed a firearm from the driver, they asked [Appellant] to exit the vehicle.

The officers then patted down [Appellant,] at which time a firearm was found. While the officers did not see a firearm or see any inference of a firearm, the officers were justified in conducting a pat-down search either under the rubric of a *Terry* stop because they would obviously have a right to detain [Appellant] for the purpose of conducting a further investigation in light of what had already occurred with the stop of the vehicle, and the case law is clear for purposes of officers' safety, the pat-down search is appropriate.

For those reasons, the [c]ourt denies the [m]otion to [s]uppress.

N.T. Suppression at 21-23.

After careful review, we conclude that the trial court's findings of fact are well-supported by the record, and we discern no error of law. Thus, we determine that the trial court properly denied Appellant's suppression motion.

Judgment of sentence affirmed.

Judgment Entered.

- 10 -

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/17/2019