600 A.2d 957

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Charles ROBINSON, Sr.**

Superior Court of Pennsylvania.

Submitted Sept. 11, 1991.

Filed Oct. 31, 1991.

Reargument Denied Jan. 13, 1992.

Kemal A. Mericle, Asst. Dist. Atty., Pittsburgh, for Com., appellant.

Shelley Stark, Public Defender, Pittsburgh, for appellee.

Before OLSZEWSKI, MONTEMURO and HOFFMAN, JJ.

HOFFMAN, Judge:

This Commonwealth appeal is from an order granting appellee's motion to suppress evidence seized in the search of his person and his vehicle. On appeal, the Commonwealth argues that the police officers who confronted appellee had a reasonable basis for stopping him and thus the evidence seized pursuant to the stop should not have been suppressed. For the reasons that follow, we agree, and,

accordingly, we reverse the order below and remand for trial.

Appellee, Charles Robinson, Sr., was charged with one count each of possessing a firearm without a license [1] and altering or obliterating marks of identification.[2] A motion to suppress was filed on July 10, 1989, and a hearing was held on August 16, 1990. Testimony was taken that day and further argument was held on January 25, 1991. The suppression motion was granted on January 25, 1991 (N.T. at 27).[3] The court held that the initial stop was illegal under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny. This appeal followed.

When the Commonwealth appeals the adverse decision of a suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole that remains uncontradicted. *Commonwealth v. Hamlin,* 503 Pa. 210, 469 A.2d 137 (1983) (plurality opinion). While we are bound by the lower court's findings of fact if supported by the record, we are not bound by the court's legal conclusions which are drawn from the facts of the case. *Commonwealth v. Cortez,* 507 Pa. 529, 491 A.2d 111 (1985).

In the instant case, the only testimony presented at the suppression hearing was that of Officer Hamman of the Pittsburgh Police Department. Her uncontradicted testimony established that on April 16, 1989 appellee was observed by Officer Hamman while on routine patrol. The officer saw appellee bending over into a van with a gun sticking out of the back of his shorts (N.T. at 12). Because of the presence of children in the area, the officer decided to drive

1.  18 Pa.C.S.A. § 6101.

2.  18 Pa.C.S.A. § 6117.

3.  We note that the Commonwealth has certified that exclusion of the appellee's statement would substantially impair its prosecution of appellee. *See* Appellant's Brief at 1. We will, therefore, entertain its appeal. *See Commonwealth v. Dugger,* 506 Pa. 537, 546–47, 486 A.2d 382, 386 (1985).

down the street and discuss the situation with her partner (N.T. at 14). The officers turned their vehicle around, headed back toward appellee's van, and stopped the van. Appellee, who was driving, was asked to exit the van. After he stepped out of the van, Officer Hamman informed appellee that she had seen a gun in the back of his pants. She performed a quick pat down of appellee and discovered a holster inside the back of his shorts. The officer then looked into the van and saw a gun lying on the right side of the floor beside the driver's seat. The gun (a .38 caliber revolver) was loaded and had deep scratches through the serial numbers (N.T. at 19).

■ Preliminarily, we note that there is no dispute that Officer Hamman's actions in stopping appellee constituted a stop under the Fourth Amendment. In the case of *Commonwealth v. Barnett*, 484 Pa. 211, 398 A.2d 1019 (1979), our Supreme Court stated that:

a policeman may legally stop a person and question him. But he may not without a warrant restrain that person from walking away ..., unless he has 'probable cause to arrest that person *or* he observes such unusual and suspicious conduct on the part of the person who is stopped ... that the policeman may reasonably conclude that criminal activity was afoot....'

We must thus view the totality of the circumstances to determine whether appellee was being 'stopped' or was merely approached for allowable questioning by the officers.

*Id.*, 484 Pa. at 215, 398 A.2d at 1021 (quoting *Commonwealth v. Berrios*, 437 Pa. 338, 340, 263 A.2d 342, 343 (1970)). *See also Commonwealth v. Jones*, 474 Pa. 364, 378 A.2d 835 (1977) (if citizen approached by officer is ordered to stop or is physically restrained, "stop" occurs). Here, appellant was driving his vehicle when he was stopped and ordered to exit by the officer. We find, therefore, that he was "stopped" under the *Jones* standard.

■ In limited circumstances, an individual may be stopped, briefly detained, and frisked for investigatory pur-

poses. *Commonwealth v. Prengle*, 293 Pa.Super. 64, 68, 437 A.2d 992, 994 (1981). In order for such a stop to be reasonable under the Fourth Amendment to the United States Constitution, the police conduct must meet two separate and distinct standards. First, the police officer must point to specific and articulable facts which warrant the initial stop. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This standard is met "if the police officer observes unusual and suspicious conduct on the part of the individual seized which leads him reasonably to believe that criminal activity may be afoot...." *Commonwealth v. Hicks*, 434 Pa. 153, 158–59, 253 A.2d 276, 279 (1969). Second, if the reasons for the stop meet the standard and, therefore, it is deemed reasonable for Fourth Amendment purposes, a police officer may frisk the individual to search for weapons. Again, such a belief must be based upon specific and articulable facts indicating that the person may be armed and dangerous. *Id.*, 434 Pa. at 159, 253 A.2d at 279. An otherwise reasonable search may be tainted by an illegal stop or arrest. *Wong Sun v. United States* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Commonwealth v. Johnson*, 474 Pa. 512, 379 A.2d 72 (1977).

■■■ The Commonwealth contends that the officer had a reasonable basis to stop appellee based on her observation of the gun stuck in appellee's pants and because the street was crowded with children. The trial court concluded, however, that the officer had no reasonable basis to believe criminal activity was afoot and that the subsequent stop and frisk was illegal thus making the evidence subject to suppression. The Commonwealth bears the burden of proving by a preponderance of the evidence that the seizure did not violate the Fourth Amendment. *Commonwealth v. Silo*, 480 Pa. 15, 21, 389 A.2d 62, 65 (1978).

While information sufficient to render a stop reasonable cannot be defined to a mathematical certainty, Pennsylvania courts have identified some situations that meet the *Terry* standard. In *Commonwealth v. Mears*, 283 Pa.Super. 416, 424 A.2d 533 (1981) our Superior Court held that just as

probable cause for an arrest or search may be provided by an informant's tip, so too an informant may provide valuable information which may lead to a justifiable *Terry* style stop and frisk. In *Mears* an officer stopped and frisked a defendant based upon an informant's tip that a man fitting a certain description was seen on a particular corner armed with a gun. The court upheld the conviction stating that the stop was legal under the Fourth Amendment. *See also Commonwealth v. Lagana,* 517 Pa. 371, 537 A.2d 1351 (1988) (our Supreme Court held that a police officer had reasonable suspicion to conduct an investigatory stop where the officer had reason to believe he was searching for a suspect who was was armed based on an informant's tip and the person stopped met the description).

The present case presents a stronger factual scenario than either *Mears* or *Lagana,* since Officer Hamman *personally observed* the firearm secured in appellee's waistband. The implicit foundation of both *Mears* and *Lagana* is that possession of a concealed firearm by an individual in public is sufficient to create a reasonable suspicion that the individual may be dangerous, such that an officer can approach the individual and briefly detain him in order to investigate whether the person is properly licensed. In the present case, Officer Hamman was acting upon a reasonable suspicion based upon her personal observation of the weapon in combination with her concern with the presence of children in the area.

■ The need to conduct an investigatory detention under the present facts clearly outweighs any harm which the stop and frisk entails. "In striking the balance between the public interest and the individual's right to personal security free from arbitrary interference of law enforcement officials, the initial inquiry must focus upon the propriety of the initial restraint of appellant's freedom of movement." *Commonwealth v. Anderson,* 481 Pa. 292, 392 A.2d 1298, 1300–1301 (1978). We find that the initial restraint of appellees freedom was warranted under the circumstances

and consequently find the stop to be legal under the Fourth Amendment.

Our next inquiry must be of whether the gun was in "plain view." [4]  We find that it was.  After making a lawful stop of appellee the officer observed the gun lying on the floor beside the driver's seat.  The officer was lawfully present at the vantage point and the discovery was inadvertent.  We find the criteria for the plain view exception to be met and that the seizure was legal under the Fourth Amendment.  Accordingly, we reverse the order of the lower court and the case is remanded for trial.

Order reversed, case remanded for trial, jurisdiction relinquished.

---

**4.** The orthodox statement of the plain view exception is, that before the police may conduct a warrantless search or seizure of evidence in plain view: the police must be lawfully present at the vantage point from which the evidence is discovered; the discovery of the evidence must be inadvertent; and the probable evidentiary value of the evidence must be immediately apparent. *Commonwealth v. Ferrari*, 376 Pa.Super. 307, 545 A.2d 1372, 1382 (1988).