J-S95043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
MICHAEL J. HICKS, :
:
Appellant : No. 510 EDA 2016

Appeal from the Judgment of Sentence January 11, 2016
in the Court of Common Pleas of Lehigh County,
Criminal Division, No(s): CP-39-CR-0005692-2014

BEFORE: STABILE, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED MARCH 29, 2017**

Michael J. Hicks ("Hicks") appeals from the judgment of sentence entered following his conviction of driving under the influence of alcohol ("DUI")—high rate of alcohol (second offense).[1] We affirm.

The suppression court briefly summarized the facts underlying Hicks's arrest as follows:

> On June 28, 2014, at approximately 2:30 [a.m.], members of the Allentown Police Department [] were dispatched to the Pace Mart[,] located at 640 N. 7th Street in Allentown, Pennsylvania[,] for a male with a firearm. The male, later identified as … [Hicks], was observed with the firearm by a city camera operator. The camera operator advised officers that [Hicks] showed the firearm to another patron, put the firearm in his waistband, covered it with his shirt, and walked inside the Pace Mart. [Hicks] eventually got back into his vehicle and began to drive away. Based on the information provided, police stopped [Hicks's] vehicle.
>
> Officer Ryan Alles [("Officer Alles")] approached [Hicks] and observed him moving his hands to his waistband. As such,

---

[1] **See** 75 Pa.C.S.A. § 3802(b).

> [Officer] Alles drew his weapon and ordered [Hicks] to keep his hands up. Officer Kyle Pammer [("Officer Pammer")] held [Hicks's] arms while [Officer] Alles removed the firearm from a holster on [Hicks's] person, [Hicks] was removed from the vehicle for safety reasons and handcuffed. Officers smelled the odor of an alcoholic beverage coming from [Hicks]. During a search of [Hicks's] person, a small bag of green leafy vegetable matter was found in [Hicks's] pocket. The substance field tested positive for marijuana.

Trial Court Order, 9/18/15, at 1-2 n.1.

Police arrested Hicks and charged him with the above-described DUI charge, as well as with one count each of disorderly conduct, DUI—general impairment (second offense), and possession of a small amount of marijuana.[2] Hicks filed a pretrial suppression Motion and a Motion for writ of *habeas corpus* as to the charge of disorderly conduct. The suppression court denied the suppression Motion, granted Hicks's Motion for *habeas corpus* relief, and dismissed the charge of disorderly conduct. Following a non-jury trial, the trial court convicted Hicks of DUI—high rate of alcohol (second offense), and acquitted him of the remaining charges. Thereafter, the trial court sentenced Hicks to 30 days to six months in jail and to pay a fine. Hicks filed a timely Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Hicks presents the following claims for our review:

A. Whether the suppression court erred in failing to grant [Hicks's] request for suppression of evidence by erroneously applying the "reasonable suspicion" standard?

---

[2] **See** 18 Pa.C.S.A. § 5503(a)(4); 75 Pa.C.S.A. § 3802(a)(1); 35 P.S. § 780-113(a)(31).

B.   Whether the suppression court erred in finding that police had sufficient reasonable suspicion to warrant the seizure of [Hicks]?

Brief for Appellant at 4.  As Hicks's claims are related, we will address them together.

Hicks first claims that the suppression court applied the wrong standard in denying his suppression Motion.  *Id.* at 9.  Hicks asserts that the suppression court erred in determining whether police had "reasonable suspicion" of criminal activity, rather than probable cause.  *Id.*  Hicks argues that "he was subjected to an illegal custodial detention[,]" unsupported by the required probable cause.  *Id.* at 9, 13.  According to Hicks, the police pole camera showed that four or five marked police cruisers, with their lights flashing, surrounded his vehicle.  *Id.* at 12.  Hicks states that Officer Alles approached Hicks with his gun drawn and pointed at Hicks.  *Id.*  Hicks contends that the officers did not inform him of the reason for the vehicle stop, or inquire as to whether he had a permit to carry a firearm.  *Id.*  Hicks states that he was taken from his vehicle, handcuffed, frisked and placed into a police vehicle.  *Id.*  Under these circumstances, Hicks asserts, he was subjected to a custodial detention or an arrest, which was not supported by the requisite probable cause.  *Id.* at 13.

In his second claim, Hicks argues that the officers lacked reasonable suspicion to justify his "seizure."  *Id.* at 15.  Hicks contends that he lawfully

possessed his weapon, and there were no indications that criminal activity was afoot. *Id.* at 16.

Our "standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Mason**, 130 A.3d 148, 151 (Pa. Super. 2015) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the suppression court." **In re L.J.**, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). "We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." **Commonwealth v. Williams**, 125 A.3d 425, 431 (Pa. Super. 2015) (citation omitted). "Once a defendant files a motion to suppress, the Commonwealth has the burden of proving that the evidence in question was lawfully obtained without violating the defendant's rights." **Commonwealth v. Fleet**, 114 A.3d 840, 844 (Pa. Super. 2015) (citation omitted).

As this Court has explained,

[t]he Fourth Amendment of the Federal Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated …." U.S. Const. amend. IV. Likewise, Article I, Section 8 of the Pennsylvania Constitution states, "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures . . ." Pa. Const. Art. I, § 8. Under Pennsylvania law, there are three

levels of encounter that aid courts in conducting search and seizure analyses.

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Williams*, 73 A.3d 609, 613 (Pa. Super. 2013) (citation omitted), *appeal denied*, 624 Pa. 690, 87 A.3d 320 (Pa. 2014).

…

> "The Fourth Amendment permits brief investigative stops … when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014). It is axiomatic that to establish reasonable suspicion, an officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989) (internal quotation marks and citations omitted). Unlike the other amendments pertaining to criminal proceedings, the Fourth Amendment is unique as it has standards built into its text, *i.e.*[,] reasonableness and probable cause. *See generally* U.S. Const. amend. IV…..

*Commonwealth v. Carter*, 105 A.3d 765, 768-69 (Pa. Super. 2014) (*en banc*); *accord*, *Mason*, 130 A.3d at 152.

Consequently,

> [a]n officer who lacks the level of information required for probable cause to arrest need not "simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145, 92 S. Ct. 1921, 32 L. Ed. 2d 612

(1972). Where an officer reasonably suspects that criminal activity is afoot, the officer may temporarily freeze the *status quo* by preventing the suspect from leaving the scene in order to ascertain his identity and gather additional information. ***Terry v. Ohio***, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The officer may also conduct a quick frisk for weapons if he reasonably fears that the person with whom he is dealing may be armed and dangerous. ***Id.*** The question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity. ***United States v. Cortez***, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981). There is no ready test for determining reasonableness other than by balancing the need to search or seize against the invasion to which the search or seizure entails. ***Terry***, 392 U.S. at 21. Police are generally justified in stopping an individual when relying on information transmitted by a valid police bulletin. ***United States v. Hensley***, 469 U.S. 221, 232, 83 L. Ed. 2d 604, 105 S. Ct. 675 (1985).

***In the Interest of D.M.***, 727 A.2d 556, 557-58 (Pa. 1999).

Finally, the United States Supreme Court has explained that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it[.]" ***Graham v. Connor***, 490 U.S. 386, 396 (1989). When police officers make an investigative stop, they may take such steps as are "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." ***Hensley***, 469 U.S. at 235. In evaluating the reasonableness of the officer's use of force, we "judge from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." ***Graham***, 490 U.S. at 443.

- 6 -

At the suppression hearing, Officer Pammer, an eight-year veteran of the Allentown Police Department, testified that at about 3:00 a.m., he and his partner, Officer Michael Mancini ("Officer Mancini") received a radio dispatch regarding "an individual at the Pace Market Gulf station … that was brandishing a firearm." N.T., 7/14/15, at 6. Officer Pammer described the location as a "high crime neighborhood," and explained that the police department has received calls regarding drug dealing, people with weapons and loitering at that location. *Id.* at 7. According to Officer Pammer, the radio dispatch informed all units "that a male in a white shirt was brandishing a firearm towards another male at the Pace Mart and that he was driving, I believe it was a silver Chevy." *Id.* at 7-8. Officer Pammer described what next transpired as follows:

> Myself and Officer Mancini[,] including several other officers that were available at that time[,] proceeding to that location. As we were pulling up to the location, I observed that Officer Alles was the first officer to be on location. He was at the rear of … [Hicks's] vehicle, which was a silver Chevy Impala. It was occupied by one male[,] who was [Hicks]. He was at the gas pumps, [Hicks] was in the vehicle and it was running.

*Id.* at 8. Officer Pammer stated that he and the other officers were in uniform, and were driving marked police units. *Id.* Officer Pammer testified as to what he observed as follows:

> When I first arrived, … Officer Alles … began running up towards the vehicle, [and] about halfway up towards the vehicle[,] I observed that he did unholster his weapon due to the nature of the call. … I heard him yelling verbal commands, I couldn't make them out because we were still a distance away. He went up to

- 7 -

the … driver's side of the door and appeared to be giving commands to [Hicks].

…

I started approaching[] Officer Alles and the vehicle. Officer Alles was giving verbal commands to show us his hands. I saw that [] Hicks was moving his hands around in the car. I got up to Officer Alles, he advised me that [Hicks] had a gun on him. Officer Alles still had his weapon out at the time. I grabbed both of [Hicks's] hands and held on to him while Officer Alles removed the firearm from the right side of [] Hicks.

…

[Hicks] was removed from the vehicle after the gun was removed safely. I could smell, upon talking to him, he smelled like alcohol. Officer Alles put handcuffs on him and then[,] while I was there[,] Officer Mancini started a pat[-]down of the outer garments of [] Hicks for any other weapons. … Officer Mancini removed a baggie of suspected marijuana from [] Hicks's front right pocket.

…

We confirmed that [Hicks] did have a concealed carry permit through Lehigh County.

*Id.* at 9-11.

Contrary to Hicks's assertions, we discern no error or abuse of discretion by the suppression court in its application of the "reasonable suspicion" standard. Here, police stopped Hicks based upon a radio dispatch regarding a man brandishing a firearm. "[P]ossession of a concealed firearm in public is sufficient to create a reasonable suspicion that the individual may be dangerous, such that an officer can approach the individual and briefly detain him in order to investigate whether the person is properly licensed."

*Mason*, 130 A.3d at 153 (quoting *Commonwealth v. Robinson*, 600 A.2d 957, 959 (Pa. Super. 1991)); *see also In the Interest of D.M.*, 727 A.2d at 558 (stating that "[p]olice are generally justified in stopping an individual when relying on information transmitted by a valid police bulletin"). Thus, the trial court properly ascertained whether officers had a reasonable suspicion that Hicks possessed a concealed firearm in public. *See Mason*, 130 A.3d at 153.

Viewed in a light most favorable to the Commonwealth, the totality of the circumstances further established that the officers' actions in removing Hicks from the vehicle and securing him were supported by reasonable suspicion, and reasonably necessary to "freeze the *status quo*[,]" prevent Hicks from leaving the scene "in order to ascertain his identity and gather additional information[,]" and to protect the officers' personal safety. *See Hensley*, 469 U.S. at 235; *D.M.*, 727 A.2d at 557. As set forth above, officers received a radio dispatch about a man in a white shirt brandishing a weapon to another man at the Pace Mart. N.T., 7/14/15, at 7. The dispatch indicated that the man was driving a silver Chevrolet Impala. *Id.* at 8. Upon arriving at the Pace Mart, Officer Pammer observed Officer Alles approaching Hicks, who was in a silver Chevrolet Impala located at the gas pumps. *Id.* When Officer Pammer approached the vehicle, he heard Officer Alles give Hicks commands to "show us his hands[,]" but Hicks "was moving his hands around in the car." *Id.* at 10. Officer Alles advised Officer

Pammer that Hicks still possessed a gun. *Id.* Upon Officer Pammer restraining Hicks's hands, Officer Alles removed the weapon from Hicks, after which Hicks was removed from the vehicle. *Id.* At that time, Officer Pammer noticed an odor of alcohol on Hicks. *Id.* at 10-11. Accordingly, we discern no error or abuse of discretion by the suppression court in the standard it applied or in its conclusion that the stop was supported by the requisite reasonable suspicion of criminal activity.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2017