J-S36002-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
TROY DAVID CHILCOTT : No. 169 WDA 2020

Appeal from the Order Entered January 10, 2020
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002382-2019

BEFORE: OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.: FILED AUGUST 26, 2020

The Commonwealth of Pennsylvania (Commonwealth) appeals from the order entered on January 10, 2020 in the Criminal Division of the Court of Common Pleas of Erie County which granted Troy David Chilcott's (Chilcott) motion to suppress evidence derived from a traffic stop. On appeal, the Commonwealth argues that the trial court erred since the police possessed reasonable suspicion to justify Chilcott's detention. We disagree and, accordingly, affirm.

The facts are not in dispute. On July 26, 2019, a 911 caller who provided her name, address, and telephone number contacted police authorities to report a disturbance at a neighboring residence. The caller stated that an argument or a fight was ongoing and that a man (later identified as Chilcott)

_____

[*] Retired Senior Judge assigned to the Superior Court.

emerged from the home and declared that he had been pistol-whipped. The caller further reported that the man re-entered the home and demanded the return of his pistol. Thereafter, according to the caller, the man re-emerged from the home, walked down the street with his pistol in his pants, and departed the scene in a silver pickup truck.

As the 911 caller relayed information to the call center, dispatchers re-conveyed the information to police officers via radio transmissions and through electronic messages delivered to computer aided dispatch (CAD) monitors housed in police vehicles. Corporal Sarah Schardt, a member of the Erie Police Department (EPD) who was on patrol duty in full uniform, was one of the officers who received the radio reports and electronic messages. After locating a truck that matched the description given by the 911 caller, Cpl. Schardt initiated a vehicle stop by activating her overhead emergency red and blue lights and manual siren. To effectuate the stop, Cpl. Schardt left her cruiser, drew her firearm and instructed Chilcott to show his hands, exit his vehicle, and get on his knees. Cpl. Schardt placed Chilcott in handcuffs in a prone position at some distance behind his vehicle. The Commonwealth characterized the encounter as a "felony traffic stop." See Commonwealth's Brief at 6.

After Chilcott was handcuffed, other police officers arrived on scene, approached Chilcott's vehicle, and observed a pistol and rifles in his pickup truck. Police also observed several empty beer cans and a box of unopened beer cans on the passenger side of Chilcott's vehicle. In addition, officers

- 2 -

recovered drug paraphernalia from the rear of the vehicle. When the officers arrived, Chilcott exhibited slurred speech, bloodshot eyes, and an unsteady gait. In addition, the odor of alcoholic beverages emanated from his breath and person.

Subsequently, the police charged Chilcott with three counts of persons not to possess firearms (18 Pa.C.S.A. § 6105), firearms not to be carried without a license (18 Pa.C.S.A. § 6106), possession of drug paraphernalia (35 P.S. § 780-113(a)(32)), driving under the influence (DUI) – general impairment (75 Pa.C.S.A. § 3802(a)(1)), and driving under suspension – DUI related (75 Pa.C.S.A. § 1543(b)(1)(i)). None of the charges filed against Chilcott arose from conduct that occurred before the vehicle stop.

On November 18, 2019, Chilcott submitted an omnibus pretrial motion. The omnibus filing included a petition for habeas corpus and sought to suppress all evidence derived from the vehicle stop, including all statements Chilcott made to the arresting officers.

On December 11, 2019, the trial court convened a suppression hearing. At the hearing, the Commonwealth introduced the testimony of Cpl. Schardt and the trial court admitted various documents, including a transcript of the 911 call, transcripts of radio dispatches issued to EPD officers, the CAD incident report, incident data sheets, and an arrest processing form. On January 10, 2020, the trial court issued an opinion and order granting Chilcott's suppression motion. In its opinion, the court made extensive findings of fact, which we reproduce as follows.

1. On July 2[6], 2019, [a 911 caller relayed the following information to dispatch operators]:

   a. "[T]here's some fight going on, and a man came out of the house with a pistol talking about, 'You pistol-whipped me', and walking down Bacon Street with a pistol." The person got into a gray Ford F-150 extended cab with shrubbery in the back.

   b. "You could hear them arguing in the house, and you could [hear] them arguing, then you heard him come out, 'You pistol-whipped me,' and then he came back to the house, like, 'Give me my pistol or I'm calling and report it stolen property.'"

   c. "Apparently the person in the house must have took the pistol off of him because he came out like, 'You pistol-whipped me,' and he left and then came back, 'Give me my pistol, give me my pistol,' and he came out the house with a pistol in his hand, walked north on Bacon, must have got in his truck and then came back south on Bacon."

   d. "I know a pistol. It was black, put it in his, he put it in his pants."

2. Corporal Schardt has been employed by [EPD] for [11] years. On July 2[6], 2019, she was in her patrol car at East 12th and Ash Streets.

3. At approximately 8:33 p.m., [Corporal Schardt] received a radio dispatch regarding the 911 call that stated that there was a "male walking down the street waving a pistol."[1] The dispatcher also said that the male got into a gray Ford truck with shrubs in the back.

4. Corporal Schardt's vehicle also has a [CAD monitor], which provided additional information regarding the call.

_____

[1] The trial court determined there was no evidence that Chilcott waved his pistol and further found that this was a misstatement by the police radio dispatcher.

5. Corporal Schardt testified that additional information received via the CAD mentioned an altercation involving [Chilcott] at the scene.

6. The [CAD message] specifically provided the following information prior to the stop of [Chilcott's] vehicle: "Male was saying that someone pistol whipped him, and then he screamed to give him his pistol, and came out of the house with a black in color pistol. It was put in his pants." The narrative also stated, "No shots have been fired," and "No one is reported to be in danger."

7. At approximately 8:39 p.m., Corporal Schardt located the suspect at 12th and Downing St. Corporal Schardt performed a U-turn and followed the vehicle [Chilcott] was driving. She activated her lights, and the vehicle initially pulled over, but then continued into a field and stopped.

8. As Corporal Schardt approached the stopped vehicle, [Chilcott] tried to open the door. Corporal Schardt testified that this [was] unusual behavior for a person who has been pulled over. Knowing that the suspect was armed based on the radio call, Corporal Schardt ordered him to show his hands, and drew her weapon. Corporal Schardt testified that she was concerned about her own safety at the time. She characterized the stop as a "felony vehicle stop."

9. When [Chilcott] exited the vehicle, Corporal Schardt ordered him down on his knees. She and another officer handcuffed him and patted him down. [Chilcott] was then placed in the back of a police cruiser, and Corporal Schardt left the scene.

10. [Corporal Schardt testified that although she called in Chilcott's license plate before initiating the vehicle stop, she did not receive a response to her request until after the stop occurred. As such, prior to the stop, Corporal Schardt did not know Chilcott's identity, nor did she know that his criminal history precluded his possession of a firearm or that his driver's license was suspended due to a prior DUI conviction.]

11. Officer Prylinski testified at [Chilcott's] preliminary hearing on August 30, 2019, that when he arrived at the scene, he saw a pistol and multiple rifles in plain view in [Chilcott's] truck.

12.      Officer Prylinski stated that [Chilcott] had heavy and slurred speech, bloodshot eyes, smelled of alcohol on his person and breath, and had to sit down, being unable to stand.

13.      Officer Prylinski observed multiple crushed beer cans in the truck as well as an unopened case of beer.

14.      Officer Prylinski testified [at Chilcott's preliminary hearing that Chilcott] appeared to be intoxicated to the point where he should not be driving.

15.      [Drug p]araphernalia and ammunition were also found in [Chilcott's] truck.

16.      [Chilcott] was not charged with any criminal offense arising from his conduct before the stop.

Trial Court Opinion, 1/10/20, at 1-3 (footnote added; internal record citations omitted).  Based on these findings, the court concluded that Cpl. Schardt lacked reasonable suspicion to support a vehicle stop because, although she knew that Chilcott possessed a firearm, she had no information showing that he had committed a crime or was going to commit a crime.  See Trial Court Opinion, 1/10/20, at 5.

The Commonwealth filed a notice of appeal on January 31, 2020.  On the same day, the trial court ordered the Commonwealth to file and serve, within 21 days, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  That order stated that issues not properly included in the concise statement shall be deemed waived.

On February 21, 2020, the Commonwealth filed its concise statement, which read in its entirety:

The [trial c]ourt erred as a matter of law and/or abused its discretion by granting [Chilcott's] [o]minibus [p]re-trial [m]otion.

Commonwealth's Concise Statement of Errors Complained of on Appeal, 2/21/20. Chilcott filed a motion to quash the Commonwealth's appeal with the trial court, arguing that its concise statement failed to identify, with adequate specificity, the issues subject to appellate review. On March 2, 2020, the trial court issued its Rule 1925(a) opinion stating that the Commonwealth's concise statement "[was] too vague to allow [the trial c]ourt to respond. As such, it – and any issues [the Commonwealth] is attempting to raise on appeal – are waived." Trial Court Opinion, 3/2/20, at 1. In the event the Commonwealth's issues were not found to be waived, the court referred to its January 10, 2020 opinion as its explanation for the order granting Chilcott's motion to suppress. On May 28, 2020, Chilcott moved before this Court to quash the Commonwealth's appeal, again citing the vagueness of the concise statement. That motion has been referred to this panel for review and disposition.

On appeal, the Commonwealth challenges the trial court's order granting Chilcott's motion to suppress. Before we reach the merits of this claim, however, we must consider Chilcott's contention that the Commonwealth has waived appellate review of its claims due to the vagueness of its concise statement.

Chilcott is correct that, in prior cases, we have held that "a [c]oncise [s]tatement which is too vague to allow the [trial] court to identify the issues

[to be] raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all." Commonwealth v. Dowling, 778 A.2d 683, 686-687 (Pa. Super. 2001). Nevertheless, we have generally applied this rule in cases where deficiencies in the concise statement "impede the trial court in its preparation of a legal analysis which is pertinent to those issues." Dowling, 778 A.2d at 686, quoting In re Estate of Daubert, 757 A.2d 962, 963 (Pa. Super. 2000).

That is not the case here. Chilcott's motion to suppress raised a single issue – the absence of reasonable suspicion to support a constitutionally valid traffic stop. In addition, the suppression hearing centered upon the development of a factual record that could be used to dispose of Chilcott's sole claim. Lastly, even without guidance from the Commonwealth, the trial court's January 10, 2020 opinion identified and discussed the pertinent issues the Commonwealth seeks to address in this appeal. In short, the vagueness of the Commonwealth's concise statement did not impede the trial court's assessment of the issues and it has not hampered our review. Hence, we shall address the merits of the Commonwealth's claims.

We apply the following principles in reviewing a challenge to an order that grants a motion to suppress.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those

findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

Commonwealth v. Korn, 139 A.3d 149, 252-253 (Pa. Super. 2016) (quotations omitted), appeal denied, 159 A.3d 933 (Pa. 2016).

The trial court here relied on our Supreme Court's recent decision in Commonwealth v. Hicks, 208 A.3d 916 (Pa. 2019) in granting Chilcott's suppression motion.[2] In Hicks, our Supreme Court overturned the per se rule formulated by this Court in Commonwealth v. Robinson, 600 A.2d 957 (Pa. Super. 1991), which held that "possession of a concealed firearm by an individual in public is sufficient to create a reasonable suspicion that the individual may be dangerous, such that an officer can approach the individual and briefly detain him in order to investigate whether the person is properly licensed." Id. at 959. In place of Robinson's per se rule, Hicks held that, "[u]nless a police officer has prior knowledge that a specific individual is not permitted to carry a concealed firearm, and absent articulable facts supporting reasonable suspicion that a firearm is being used or intended to be used in a criminal manner, there simply is no justification for the conclusion that the mere possession of a firearm, where it lawfully may be carried, is alone

_____

[2] Neither side disputes that the July 26, 2019 encounter between Cpl. Schardt and Chilcott constituted an investigative detention. Hence, reasonable suspicion was required to support the intrusion. See Hicks, 208 A.3d at 921 (investigatory stop is permitted where officer reasonably suspects individual is committing or has committed an offense).

suggestive of criminal activity." Hicks, 208 A.3d at 937. Applying Hicks, the trial court determined that, although "the police had information that [Chilcott] possessed a firearm," there was no reasonable suspicion for the stop because "[t]here was no evidence [Chilcott] had committed a crime, or was going to commit a crime." Trial Court Opinion, 1/10/20, at 5.

The Commonwealth challenges this ruling on appeal. In support of its claim, the Commonwealth argues that, "Corporal Schardt understood there had been an altercation in the area of East 8th Street, a firearm was involved, the weapon was in [Chilcott's] possession and that [Chilcott] had left the area in a silver Ford truck with shrubbery in the bed of the truck." Based upon this information, the Commonwealth maintains that Corporal Schardt's understanding of Chilcott's involvement with the altercation constituted "more than a reasonable basis to seize [Chilcott] as part of an investigatory detention." Commonwealth's Brief at 9.

We are unable to agree with the Commonwealth's contention. The following exchange, elicited on cross-examination of Corporal Schardt during the suppression hearing, demonstrates convincingly that when Corporal Schardt effectuated the traffic stop sub judice, she could cite no articulable facts that established or described Chilcott's role in criminal activity or his imminent intent to perpetrate an offense, apart from his possession of a firearm.

[DEFENSE COUNSEL]:  Did you or could you have followed the pickup truck to observe the driver?

[CORPORAL SCHARDT]:  It wasn't extremely necessary to follow the pickup truck when I was under the presumption that that was, in fact, the vehicle that I was looking for.

[DEFENSE COUNSEL]:  Umm, but could you have continued to follow the pickup truck to its destination and observe the driver in an effort to determine whether or not he was engaged in criminal activity?

[CORPORAL SCHARDT]:  I wouldn't have done that.

[DEFENSE COUNSEL]:  Could you have?

[CORPORAL SCHARDT]:  I guess, given the circumstances of me believing that he may be in possession of a firearm, and that some type of incident occurred with that firearm, I don't think anybody would have just followed the vehicle, waiting for I don't know what.

I think anybody would have just immediately pulled over the vehicle to continue the investigation.

[DEFENSE COUNSEL]:  My question is, could you have continued to follow him?

[CORPORAL SCHARDT]:  I mean, I guess, but I wouldn't.

N.T. Suppression, 12/11/19, at 50-51 (emphasis added).

In the absence of articulable, individualized suspicion that Chilcott had engaged in criminal activity or was intent on committing an offense, the trial court correctly concluded that Chilcott's mere possession of a firearm did not raise valid grounds to support an investigative detention.  Hence, the Commonwealth is not entitled to relief.

Order affirmed.  Motion to quash denied.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/26/2020</u>