J-S30011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER SANCHEZ | : | |
| | : | |
| Appellant | : | No. 2910 EDA 2022 |

Appeal from the Judgment of Sentence Entered October 7, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001384-2022

BEFORE: BENDER, P.J.E., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:               **FILED NOVEMBER 28, 2023**

Appellant, Christopher Sanchez, appeals from the judgment of sentence of 6 to 12 years' incarceration, imposed after he was convicted, following a non-jury trial, of one count of possession of a firearm by a person prohibited, 18 Pa.C.S. § 6105(a)(1). On appeal, Appellant solely challenges the court's denial of his pretrial motion to suppress the firearm he was convicted of possessing. After careful review, we affirm.

The facts established at the suppression hearing in this case were summarized by the trial court, as follows:

> On December 29, Police Officer Leggie Thompson (hereinafter "Officer Thompson")[,] at approximately 9:30 am[,] was on bicycle patrol when he received a call for a ["]disturbance on highway — person with a gun.["] Notes of Testimony (hereinafter "N.T."), 08/08/2022[,] at 9-10. He arrived less than five minutes [later] on the 1800 block of East Wishart Street in Philadelphia when he observed … Appellant running with a black weapon in his right hand. *Id.* at 10. Officer Thompson saw the firearm in

Appellant's hand less than 10 feet away as "he was running west while [the officer was] riding east on East Wishart." *Id.* at 10-11. Appellant moved the gun from his right side to between his legs[.[1]] Officer Thompson told Appellant twice to drop the weapon. *Id.* at 12. Appellant dove down behind a parked car and Officer Thompson heard the metal when the gun was tossed hitting the ground. *Id.* at 12-13. Appellant was detained and Officer Thompson recovered the black handgun, a Taurus G3C .9 millimeter. *Id.* at 14[-]15[,] … 21-22. When asked, Appellant "said he [did not] have a permit to carry, [and] he's on state parole." *Id.* at 14. The incident was captured as described on police body[-]worn camera. *See* [Commonwealth's] Exhibit C-4.

Trial Court Opinion (TCO), 1/10/23, at 2.

Appellant was arrested and charged with several firearm offenses, including possession of a firearm by a person prohibited. Prior to trial, Appellant filed a motion to suppress the firearm. After a hearing on August 8, 2022, the court denied Appellant's motion. The Commonwealth then filed a motion to *nol prosse* all charges except the single count of possession of a firearm by a person prohibited. The court granted that motion and Appellant's case proceeded to a non-jury trial, at the close of which the court found Appellant guilty of that offense. On October 7, 2022, Appellant was sentenced to the term set forth above. He filed a timely motion for reconsideration of his sentence, which was denied. Appellant then filed a timely notice of appeal, and he complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise

---

[1] Specifically, Officer Thompson testified that the gun "was on [Appellant's] right leg, but as soon as he looked up and saw [the officer], he started to put it in between both legs" and moved it "towards his cro[tch] area in between his thigh[s]." *Id.* at 11 (quoting officer's testimony, as well as the Commonwealth's explanation of the officer's physical motions demonstrating how Appellant moved the weapon).

statement of errors complained of on appeal. Herein, Appellant states one issue for our review:

> Did not the trial court err in denying [A]ppellant's motion to suppress a firearm that was the fruit of a stop unsupported by reasonable suspicion under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution where the arresting officers only saw Appellant running with a gun, in contradiction to the holding of the Pennsylvania Supreme Court in *Commonwealth v. Hicks*, 208 A.3d 916, 937 (Pa. 2019)?

Appellant's Brief at 4.

Our standard and scope of review of a challenge to a suppression court's order denying, or granting, a motion to suppress evidence is well-settled:

> When we review the ruling of a suppression court[,] we must determine whether the factual findings are supported by the record. When it is a defendant who [] appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.

*Hicks*, 208 A.3d at 925 (citation omitted). "As an appellate court, we are not bound by the suppression court's conclusions of law; rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary." *Id.* (citation and original quotation marks omitted). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

- 3 -

Here, Appellant avers that the trial court erred by denying his motion to suppress. He insists that he was seized when Officer Thompson ordered him to drop the firearm and that, at that point, Officer Thompson lacked reasonable suspicion that Appellant was engaged in any unlawful behavior. Appellant contends that "[t]he situation in the instant case is indistinguishable" from **Hicks**. There,

> the defendant stopped at a gas station to fuel his vehicle, spoke with an acquaintance, and showed that individual his concealed firearm before he proceeded to enter the convenience store to pay for his gasoline. Surveillance camera footage revealed that the defendant was carrying the concealed weapon as he entered the store. Police officers had been alerted to this fact, and when the defendant exited the establishment, police officers seized him at gunpoint, removed him from his vehicle, and restrained him based exclusively upon his possession of a concealed firearm in public, which, it subsequently was determined, the defendant was licensed to possess and carry. During this incident, officers retrieved the defendant's firearm from a holster on his waistband, when they noticed the odor of alcohol emanating from him. They also discovered a small amount of marijuana in his pocket.
>
> After being charged with, *inter alia*, driving under the influence of alcohol and possession of marijuana, the defendant filed a motion to suppress the evidence recovered in the search. The trial court denied suppression based upon the Superior Court's ruling in **Commonwealth v. Robinson**, 600 A.2d 957 (Pa. Super. 1991), which held that the "possession of a concealed firearm by an individual in public is sufficient to create a reasonable suspicion that the individual may be dangerous, such that an officer can approach the individual and briefly detain him in order to investigate whether the person is properly licensed." **Id.** at 959. The defendant in **Hicks** was subsequently convicted of driving under the influence of alcohol, and later appealed his judgment of sentence, challenging the denial of suppression. The Superior Court affirmed the defendant's judgment of sentence based on its previous decision in **Robinson**.

- 4 -

Th[e Supreme] Court granted allowance of appeal in *Hicks* to consider the viability of the *Robinson* holding. Upon close examination of the issue, [the Court] held that the *Robinson* rule subverts the fundamental protections of the Fourth Amendment and contravenes *Terry v. Ohio*, 392 U.S. 1 … (1968), which requires law enforcement officers, in effectuating a lawful stop and frisk of an individual, to suspect reasonably: (1) that the person apprehended is committing or has committed a criminal offense; and (2) that the person stopped is armed and dangerous. *Hicks*, 208 A.3d at 921

In analyzing whether the requisites of *Terry* were established, th[e] Court found "no justification for the notion that a police officer may infer criminal activity merely from an individual's possession of a concealed firearm in public." *Hicks*, 208 A.3d at 936. Acknowledging that it is unlawful to carry a concealed firearm if the individual is statutorily prohibited from firearm ownership or unlicensed to carry a concealed firearm, we emphasized that it is not a criminal offense for a license holder to carry a concealed firearm in public. *Id.*

[The *Hicks* Court] explained that "[u]nless a police officer has prior knowledge that a specific individual is not permitted to carry a concealed firearm, and absent articulable facts supporting reasonable suspicion that a firearm is being used or intended to be used in a criminal manner, there simply is no justification for the conclusion that the mere possession of a firearm, where it lawfully may be carried, is alone suggestive of criminal activity." *Id.* at 937. Th[e] Court reasoned that the *Robinson* rule eliminated the requirement of individualized suspicion, and misapplied the totality of the circumstances test. *Id.* Further, we explained, the *Robinson* rule impermissibly allowed the conduct for which the individual obtained a license to serve as the exclusive basis for the deprivation of the licensee's liberty. *Id.* at 940. Accordingly, [the *Hicks* Court] held that "with respect to the conduct at issue – in which hundreds of thousands of Pennsylvanians are licensed to engage lawfully, [] that conduct alone is an insufficient basis for reasonable suspicion that criminal activity is afoot." *Id.* at 945.

*Commonwealth v. Barr*, 266 A.3d 25, 42-24 (Pa. 2021).

The *Hicks* Court then went on to conclude that, "[e]ven viewing all of the evidence in the light most favorable to the Commonwealth, there exist[ed]

- 5 -

no basis for a finding that Hicks was engaged in any manner of criminal conduct." ***Hicks***, 208 A.3d at 950. It explained:

> There was no indication or apparent threat of violence, and no information suggesting that Hicks engaged in any type of confrontation with another individual, physical, verbal, or otherwise. Neither the camera operator's report nor the police radio dispatch suggest anything of the sort. Indeed, "[t]he video from the camera clearly shows the firearm concealed in [Hicks'] waistband and that, despite the hour, there are a number of individuals at this location." Brief for Commonwealth at 16. However, significantly, no individual expresses any visible indication of alarm at Hicks' presence, his possession of his firearm, or the manner in which he carried it. Rather, the video depicts patrons of a gas station going about their business, at least two of whom engage in seemingly friendly interactions with Hicks.

***Id.*** The Court also reasoned that the "the time of day at which the seizure occurred and the fact that Hicks was seized in … a high crime neighborhood[,]" while "relevant contextual considerations in a totality of the circumstances inquiry[,]" were not sufficient to demonstrate a "particularized basis upon which to suspect that Hicks' mere possession of a concealed firearm was unlawful." ***Id.*** at 951. Thus, no reasonable suspicion existed to support the officers' detention of Hicks.

Appellant's claim that ***Hicks*** supports that there was no reasonable suspicion to detain him in this case is meritless. First, we note that Appellant never contended, in his suppression motion or at the hearing below, that he was detained when Officer Thompson ordered him to drop the weapon. Instead, Appellant indicated at the suppression hearing that he was detained when Officer Thompson placed him in handcuffs. ***See*** N.T. at 23 (defense

counsel's stating that Appellant "was immediately placed in handcuffs by the officer. The officer testified that [Appellant] was detained. So then moving onto the question of what basis there was to detain him in that manner, I would argue that there was none. There was not any sort of sufficient basis to place him in handcuffs, to point a service weapon at him."). Thus, any argument that Appellant was detained prior to being handcuffed is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In any event, even assuming Appellant was seized at the moment Officer Thompson ordered him to drop his gun, there were sufficient facts to show that the officer had reasonable suspicion to detain Appellant at that time. The present case is distinguishable from the innocuous facts of *Hicks*. Here, less than five minutes after officers received a call about a "disturbance" involving a person with a gun, Officer Thompson saw Appellant running towards the officer with a gun in his hand. We agree with Appellant that his running *toward* the officers, before he had even noticed them, did not constitute "flight" as that term is typically used in the reasonable suspicion analysis. *See In re D.M.*, 781 A.2d 1161, 1164 (Pa. 2001) (finding that the defendant's running away as police approached was "unprovoked flight in a high crime area" that was sufficient to create reasonable suspicion for police to pursue and stop him); *Commonwealth v. Foglia*, 979 A.2d 357, 359 (Pa. Super. 2009) (*en banc*) (concluding that the defendant's walking away from police constituted flight that was a factor in finding reasonable suspicion

existed to stop him). However, the fact that Appellant was holding a gun in his hand, while running away from the location of a reported disturbance involving an armed individual, were certainly factors that a reasonable officer would deem suspicious. Additionally, Officer Thompson's testimony that once Appellant saw him, he moved the gun in between his legs made it reasonable for the court to infer that Appellant attempted to conceal the weapon, thus bolstering the officer's suspicion that Appellant was not acting lawfully in possessing and/or using that weapon.

In sum, while each of these facts alone might not have been enough to validate a detention, the combination of the circumstances known to Officer Thompson provided him with reasonable suspicion that Appellant was engaged in criminal behavior, namely, the illegal possession and/or use of a firearm. ***See Commonwealth v. Mackey***, 177 A.3d 221, 233 (Pa. Super. 2017) ("[A] combination of facts may establish reasonable suspicion….") (citations omitted). Thus, even if Officer Thompson detained Appellant at the moment he ordered him to drop the firearm, the officer possessed reasonable suspicion to support that detention.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/28/2023